UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Joseph G. Taylor, et al,                  Case No. 1:12cv890

    Plaintiffs,                                Judge Michael R. Barrett

      v.

City of Mason, *et al.*,

    Defendants.

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss of Defendants City of Mason and City of Mason Police Department (collectively "Defendants"). (Doc. 8). Plaintiffs Joseph Taylor and Miya Wilkinson have filed a Memorandum in Opposition (Doc. 18), and Defendants have filed a Reply (Doc. 20). For the reasons explained below, the Court denies the Motion to Dismiss.

### I. BACKGROUND

Plaintiffs allege that Defendants have violated the American with Disabilities Act ("ADA") and the Federal Rehabilitation Act ("Rehabilitation Act"), and that Defendants falsely imprisoned Taylor. Plaintiffs rely on the following factual allegations in support of those claims:

Joseph Taylor ("Taylor") is a deaf person whose primary language is American Sign Language ("ASL"). (Doc. 3, ¶ 14). He has been completely deaf since birth. (*Id.*) Taylor's girlfriend, Miya Wilkinson ("Wilkinson"), also is deaf. (*Id.*, ¶ 15). Taylor and Wilkinson reside together with their two children in an apartment in Mason, Ohio. (*Id.*) Jessica Vissing ("Vissing"), who is partially deaf, occasionally babysat the children of Taylor and Wilkinson. (*Id.*, ¶ 16). Vissing speaks and understands ASL. (*Id.*)

1

On November 18, 2010, an incident occurred between Taylor and Vissing. (Doc. 3, ¶ 17). Taylor contends Vissing physically assaulted him after she took his keys away from him while engaging in light "horseplay." (*Id.*, ¶ 18). Vissing contends that Taylor tickled her, and then shoved her into the bedroom and forcefully tried to rape her. (*Id.*, ¶ 19). Immediately after the incident, Taylor called the Mason Police Department to report the assault by Vissing, using the phone company's TDD system that provides an interpreter to read the caller's typed communications to a third party. (*Id.*, ¶ 20). Vissing did not call the police, but later claimed she was the victim of gross sexual assault. (*Id.*, ¶ 21).

When the Mason police showed up at the apartment, they discovered Taylor and Wilkinson were deaf and could not effectively communicate with them except through ASL. (*Id.*, ¶ 22). Taylor requested an ASL interpreter. (*Id.*, ¶ 23). Although the police called an interpreter, they did not wait for the interpreter before they began their questioning and their investigation of the incident. (*Id.*, ¶ 24). Instead, the police used Vissing to interpret Taylor's and Wilkinson's version of the events and to otherwise investigate the incident. (*Id.*, ¶¶ 26, 30).

Taylor was arrested at the scene and taken to the Mason jail. (*Id.*, ¶ 30). Once at the jail, Taylor requested an interpreter. (*Id.*, ¶ 32). Although he was provided an interpreter, the interpreter was not ASL certified. (*Id.*, ¶ 33). Taylor expressed his dissatisfaction with the interpreter, but the police proceeded to communicate to Taylor his Miranda rights through the uncertified ASL interpreter. (*Id.*) Taylor initialed the form he was told to sign, but did not fully understand his Miranda rights. (*Id.*) Taylor later was told he was under arrest for gross sexual imposition. (*Id.*, ¶ 34). Taylor accepted

2

plea deal for a lesser charge. (*Id.*, ¶ 37).[1]

## II. MOTION TO DISMISS STANDARD

Defendants move for dismissal for failure to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556).

## III. ANALYSIS

### A. ADA and Rehabilitation Act Claims

Section 504 of the Rehabilitation Act prohibits entities receiving federal funds

---

[1] Defendants contend that the plea deal occurred after Taylor had obtained counsel.

3

from discriminating against individuals with disabilities.  It provides, in relevant part: "No otherwise qualified individual with a disability in the United States . . .  shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."  29 U.S.C. § 794(a).  *See also* 28 C.F.R. § 42.503.  Title II of the ADA similarly provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132. Both Congress and the Sixth Circuit have dictated that Title II of the ADA be interpreted in a manner consistent with Section 504 of the Rehabilitation Act.  42 U.S.C. §§ 12134(b), 12201(a); *Zibbell v. Mich. Dep't of Human Servs.*, 313 F. App'x 843, 849 (6th Cir. 2009) (citing *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007); *Doe v. Salvation Army in the United States*, 531 F.3d 355, 357 (6th Cir. 2008)).  As such, cases construing one statute are instructive in construing the other statute.  *Center v. City of West Carrollton*, 227 F. Supp. 2d 863, 867 (S.D. Ohio 2002) (citing *McPherson v. Mich. High Sch. Ath. Ass'n*, 119 F.3d 453, 460 (6th Cir. 1997) (en banc)).

To make out a prima facie case under Section 504 of the Rehabilitation Act or Title II of the ADA, a plaintiff must establish that (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his

4

disability. *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (citing *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003)); see also *Center*, 227 F. Supp. 2d at 867. At this stage of the litigation, the parties dispute only the third element of the prima facie case. Specifically, the parties dispute whether, prior to Taylor's arrest or at the Mason jail, Taylor was excluded from participating in or denied the benefits of a service, activity or program solely because of a disability.

Before discussing the particular arguments of the parties, the Court finds it helpful to set forth the applicable regulations. Under 28 C.F.R. § 35.160, a regulation promulgated by the Department of Justice to implement Title II of the ADA,[2] a public entity has the following responsibilities in terms of communication and auxiliary aids:

> (a)(1) A public entity shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others.
>
> (2) For purposes of this section, "companion" means a family member, friend, or associate of an individual seeking access to a service, program, or activity of a public entity, who, along with such individual, is an appropriate person with whom the public entity should communicate.
>
> (b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.
>
> (2) The type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length and complexity of the communication involved; and the context in which

---

[2] 28 C.F.R. § 35.101 provides: "The purpose of this part is to effectuate subtitle A of title II of the Americans with Disabilities Act of 1990 (42 U.S.C. 12131), which prohibits discrimination on the basis of disability by public entities."

5

the communication is taking place. In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

(c) . . .

(2) A public entity shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication except –

(i) In an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or

(ii) Where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances.

28 C.F.R. § 35.160(a)-(c). With respect to the deaf and hearing impaired, auxiliary aids and services include:

Qualified interpreters on-site or through video remote interpreting (VRI) services; notetakers; real-time computer-aided transcription services; written materials; exchange of written notes; telephone handset amplifiers; assistive listening devices; assistive listening systems; telephones compatible with hearing aids; closed caption decoders; open and closed captioning, including real-time captioning; voice, text, and video-based telecommunications products and systems, including text telephones (TTYs), videophones, and captioned telephones, or equally effective telecommunications devices; videotext displays; accessible electronic and information technology; or other effective methods of making aurally delivered information available to individuals who are deaf or hard of hearing.

28 C.F.R. § 35.104. Appendix A to Part 35 of the ADA regulations reemphasizes that:

The public entity shall honor the choice [of the individual with a

6

> disability] unless it can demonstrate that another effective means of communication exists or that use of the means chosen would not be required under § 35.164. Deference to the request of the individual with a disability is desirable because of the range of disabilities, the variety of auxiliary aids and services, and different circumstances requiring effective communication.

28 C.F.R. Pt. 35, Appx. A (internal quotations omitted). Nevertheless, Section 35.164 provides limits on the duty to provide auxiliary aids:

> This subpart does not require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens. In those circumstances where personnel of the public entity believe that the proposed action would fundamentally alter the service, program, or activity or would result in undue financial and administrative burdens, a public entity has the burden of proving that compliance with this subpart would result in such alteration or burdens. The decision that compliance would result in such alteration or burdens must be made by the head of the public entity or his or her designee after considering all resources available for use in the funding and operation of the service, program, or activity and must be accompanied by a written statement of the reasons for reaching that conclusion. If an action required to comply with this subpart would result in such an alteration or such burdens, a public entity shall take any other action that would not result in such an alteration or such burdens but would nevertheless ensure that, to the maximum extent possible, individuals with disabilities receive the benefits or services provided by the public entity.

28 C.F.R. § 35.164.

Having now set forth the applicable law and regulations, the Court turns to the specific issues raised by Defendants' Motion to Dismiss.

### 1. Whether benefits were denied to Taylor prior to his arrest

In the Complaint, Plaintiffs assert that Defendants failed to provide an appropriate auxiliary aid (i.e., an ASL interpreter) when it responded to Taylor's telephone call to report the assault by Vissing, and instead, relied on Vissing to interpret

7

for Taylor. Defendants contend that Taylor's claim does not fall within the ADA or Rehabilitation Act because he had no right to communicate with police prior to his arrest such that he was not entitled to an interpreter, and that all the police needed was probable cause to arrest him, which they received from Vissing's report of the incident.

The Court disagrees with Defendants. Defendants' arguments fail to take into account allegations that Taylor initiated the phone call to police and he did so because Vissing had assaulted him. The Court finds those allegations are significant. In the cases upon which Defendants rely, none of the individuals arrested had initiated the phone call to police to seek their assistance; instead, in each of those cases, another individual initiated the report of an alleged crime. *See United States v. Lanier*, 636 F.3d 228 (6th Cir. 2011) (management at hotel reported observation of drugs in a hotel room, which led to investigation and development of probable cause); *Klein v. Long*, 275 F.3d 544, 552 (6th Cir. 2001), *abrogated in par on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) (wife called 911 regarding domestic abuse and husband was then arrested; failure to interview the suspect did not violate his constitutional rights because probable cause supported his arrest); *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (tip from informant along with illegal sale sufficient for probable cause); *Scott v. City of Bexley*, 11 F. App'x 514, 518-19 (6th Cir. 2001) (wife called 911 to report domestic abuse, and husband was ultimately arrested); *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1010-11 (6th Cir. 1999) (tip from informant and corroborating evidence gave officers probable cause for arrest); *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999) (allegations against officer by inmate followed by investigation); *Criss v. City of*

*Kent*, 867 F.2d 259, 262 (6th Cir. 1988) (officer observed city signs in apartment in which suspect was co-tenant and developed probable cause for arrest).[3]  Defendants do not rely on any caselaw demonstrating that an individual who initiated contact with police does not have a right to effectively communicate with those police when they arrive on the scene.  Notably, caselaw specifically addressing claims under the ADA and Rehabilitation Act suggests that such a right may exist.  *See Center v. City of West Carrollton*, 227 F. Supp. 2d 863 (S.D. Ohio 2002) (denying summary judgment regarding the effectiveness of auxiliary aids provided to a deaf 911 caller after the police arrived on the scene); *Salinas v. City of New Braunfels*, 557 F. Supp. 2d 771, 776-77 (W.D. Tex. 2006) (motion to dismiss denied where deaf individual who called 911 after finding boyfriend motionless in home given that municipality's 911 emergency response services fell within those covered by ADA and Rehabilitation Act, the scene was secure and there was no threat to human life and there was no evidence that she was a suspect in the incident for which she had called 911); *see also McCray v. City of Dothan*, 169 F. Supp. 2d 1260, 1275 (M.D. Ala. 2001), *affirmed in part and reversed in part without published opinion by*, 67 F. App'x 582 (11th Cir. 2003) (finding deaf individual should have been given interpreter during on-the-scene questioning).

Also factoring into the Court's analysis are the allegations that the police specifically attempted to communicate with Taylor at the scene, and called an interpreter to assist but did not wait on that interpreter.  When initiating communication with Taylor, the police should have provided him the opportunity to communicate as effectively as a non-disabled person under the circumstances.  *See Tucker v.*

---

[3] None of the cases relied upon by Defendants address claims under the ADA or Rehabilitation Act.

*Tennessee*, 539 F.3d 526, 534-36 (6th Cir. 2008); *McCray*, 169 F. Supp. 2d at 1275. Here, the facts construed in favor of Plaintiffs suggest Defendants did not provide Taylor such an opportunity.  Defendants do not argue that they reasonably accommodated Taylor's accommodation request through appropriate auxiliary aids.  Instead, the allegations suggest that the only means of communication used was interpretation through Vissing, who allegedly assaulted Taylor.  Taylor does not indicate that he consented to having Vissing interpret for him, as is required under the regulations to use an adult accompanying the deaf individual as the interpreter.  Nor have Defendants demonstrated that the use of Vissing as an interpreter was appropriate under the circumstances, or that the provision of an interpreter under those circumstances would fundamentally alter the nature of the police department's services or would constitute an undue burden such that Taylor's request fell within the scope of 28 C.F.R. § 35.164.

Further, when the facts are construed in favor of Plaintiffs, they do not demonstrate that the circumstances changed during the encounter with police such that the police should not have been required to wait for the independent interpreter to arrive at the scene.  Specifically, the allegations do not show that Taylor posed a threat to the health or safety of officers or others, or that exigent circumstances existed so as to require a rushed investigation.  *See Tucker*, 539 F.3d at 534-36; *McCray*, 169 F. Supp. 2d at 1275.  Based on the allegations, the Court reasonably can infer that the situation was under control and the police could have waited for the interpreter to arrive on the scene.  *See Tucker*, 539 F.3d at 534-36; *McCray*, 169 F. Supp. 2d at 1275.

Although Plaintiffs' allegations may ultimately be disproven or other facts may

come to light that alter the analysis, the Court finds that at this stage of the litigation Plaintiffs' allegations, when accepted as true, are sufficient to withstand a motion to dismiss Taylor's ADA and the Rehabilitation Act claims. Accordingly, Defendants' Motion to Dismiss is denied on this ground.

### 2. Whether Benefits Were Denied to Taylor at the Mason Jail

Plaintiffs contend that Taylor was denied benefits at the Mason jail because, after he expressed dissatisfaction with the interpreter that had been provided to him, he was not provided an ASL interpreter that satisfied the requirements of the ADA or Rehabilitation Act. Defendants argue that Plaintiffs' allegations are insufficient to state a plausible claim for relief because (1) Taylor had no right to communicate with police officers, (2) he received an interpreter, and (3) he has alleged no facts that show the interpreter provided was not ASL-certified or that show he could not understand that interpreter.

Construing the facts in favor of Plaintiffs, the Court finds that they have stated a plausible claim for relief in regards to whether Taylor was denied benefits at the Mason jail. First, for the reasons explained above, the Court finds that Plaintiffs have stated a plausible claim as to Taylor's denial of benefits during questioning, and finds that the case becomes even more compelling during investigative questioning at the jail and when being read his Miranda rights. *See Tucker*, 539 F.3d at 532 ("[W]e find that the ADA applies to the post-arrest detention at the jail."); *see also Calloway v. Boro of Glassboro Dep't of Police*, 89 F. Supp. 2d 543, 555-56 (D.N.J. 2000) (concluding that deaf individual deprived of benefit of providing information to the police concerning

commission of crimes, in witness or suspect capacity, if not provided an interpreter during station-house questioning).

Second, Plaintiffs have alleged sufficient facts to plausibly show that the interpreter provided to him at the Mason jail did not provide the same level of effective communication that a non-disabled person would receive. Specifically, he has alleged that his primary language is ASL, but the interpreter provided was not certified in ASL. Although Plaintiffs have not shown that ASL certification is required, the issue of whether an appropriate, effective auxiliary aid has been provided to an individual is a fact-specific inquiry, and Plaintiffs' allegations plausibly lend support to an argument that the interpreter provided was not sufficiently skilled in ASL to ensure effective, accurate and impartial interpretation. *See* 28 C.F.R. § 35.104 (defining qualified interpreter). Further, Taylor alleges that he expressed dissatisfaction with the interpreter and he did not fully understand his Miranda rights. While it is unclear as to whether he did not understand the Miranda rights themselves or was impeded in his understanding of those rights by the interpreter, a reasonable inference in Taylor's favor is that he did not understand the interpretation of those rights provided by the interpreter. As such, it is plausible at this stage of the litigation that the accommodation provided was not effective. While the Court recognizes that law enforcement does not always have to provide the exact auxiliary aid requested, the regulations place the burden on law enforcement to ensure that the communication with a deaf individual is as effective as communications with other non-disabled individuals. 28 C.F.R. § 35.104. The law enforcement agency should give primary consideration to the requests of the deaf

individual in regards to auxiliary aids and generally give deference to the deaf individual's requests, which may include requests for a different interpreter. *Id.*; 28 C.F.R. Pt. 35, Appx. A. If the law enforcement agency does not defer to the deaf individual's request, then the burden is on it to demonstrate that another effective means of communication exists or that the requested auxiliary aid would otherwise not be required. 28 C.F.R. Pt. 35, Appx. A. Further, if there are other limitations in providing the requested auxiliary aid, then the burden is on the law enforcement agency to demonstrate that those limitations exist. *Id.* Given those circumstances, dismissal at this stage of the litigation is not appropriate.

Third and finally, the Court is not persuaded by Defendants' argument that Plaintiffs have failed to show that the lack of an ASL-certified interpreter was the result of discrimination directed specifically at Taylor. The Court assumes that Defendants rely on *Tucker* for the statement that "the plaintiff must show that the discrimination was *intentionally* directed toward him or her in particular" and that acts and omissions that have only a disparate impact on disabled persons in general are not specific acts of intentional discrimination against the plaintiff specifically. *See Tucker*, 539 F.3d at 532 (emphasis in original). Considering that statement, the Court finds under the facts alleged it is plausible that the lack of an effective interpreter was directed towards Taylor in particular. Unlike in *Tucker* where the plaintiff complained about a lack of TTY telephones at the facility that generally impacted all deaf individuals who came to that facility, the facts construed in favor of Taylor suggest that the lack of a skilled ASL interpreter or other effective auxiliary aid was not a constant condition at the Mason jail

13

that affected all deaf individuals but was a specific lack of accommodation for Plaintiff where such accommodation was available or could reasonably have been made available to him. Further, the facts as alleged do not demonstrate that other effective means of communication were provided to Taylor. Therefore, Plaintiffs have alleged sufficient facts to plausibly suggest that reasonable accommodations were not provided to Taylor to ensure communications that were as effective as those provided to non-disabled persons. *See* 42 U.S.C. § 12132; 28 U.S.C. § 794(a).

Accordingly, Defendants' Motion to Dismiss on this ground is denied.

### 3. Whether Taylor was Falsely Imprisoned

Defendants moved to dismiss Plaintiffs' false imprisonment claim. (Doc. 8, pp. 8-9). In response, Plaintiffs conceded that the false imprisonment claim was unsupported by the facts in the case at the present time. Plaintiffs therefore agreed to "either dismiss this claim" or "to agree to a joint dismissal of that claim." (Doc. 18, p. 5). Defendants did not respond to Plaintiffs' purported agreement in the reply. Given Plaintiffs' response, the Court will not address the merits of the false imprisonment claim. Instead, the Court will leave it to the parties to determine whether dismissal by Plaintiffs or a joint dismissal is appropriate in this matter.

### IV. **CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss (Doc. 8) is **DENIED**. Plaintiffs shall submit the proper dismissal of its false imprisonment claim in accordance with its representations in its response (Doc. 18) within **14 days** of the Opinion and Order.

**IT IS SO ORDERED.**

s/ Michael R. Barrett
Michael R. Barrett, Judge
United States District Court
